IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


| | | |
|---|---|---|
| PAYRANGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 23-278(MN) |
| v. | ) | |
| | ) | |
| CSC SERVICEWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |


Wednesday, March 27, 2024
2:00 p.m.
Teleconference


844 King Street
Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge



APPEARANCES:


        POTTER ANDERSON & CORROON LLP
        BY:  ANDREW MARK MOSHOS, ESQ.

        -and-

        WILSON SONSINI GOODRICH & ROSATI PC
        BY:  RYAN R. SMITH, ESQ.
        BY:  JAMIE Y. OTTO, ESQ.


                Counsel for the Plaintiff

```
 1    APPEARANCES CONTINUED:

 2
                  PHILLIPS McLAUGHLIN & HALL, P.A.
 3                BY:  MEGAN C. HANEY, ESQ.

 4                -and-

 5                SHOOK HARDY & BACON, LLP
                  BY:  AMELIA E. MURRAY, ESQ.
 6                BY:  MARK D. SCHAFER, ESQ.
                  BY:  RYAN D. DYKAL, ESQ.
 7                BY:  EVAN J. WEIDNER, ESQ.

 8
                            Counsel for the Defendant
 9

10

11                _ _ _ _ _ _ _ _ _ _ _

12

13

14            THE COURT:  Good afternoon, counsel.  Who is

15    there, please?

16            MR. MOSHOS:  Good afternoon, Your Honor.  This

17    is Andrew Moshos from Potter Anderson on behalf of the

18    plaintiff, PayRange.  And with me today are my co-counsel,

19    Ryan Smith and Jamie Otto from Wilson Sonsini.  With the

20    Court's permission, Mr. Smith will be handling the argument

21    today.

22            THE COURT:  All right.

23            MS. HANEY:  Good afternoon, Your Honor.  This is

24    Megan Haney from Phillips McLaughlin & Hall on behalf the

25    defendant, CSC.  I am joined today by Mark Schafer, Amelia
```

1    Murray and Evan Weidner from Shook Hardy & Bacon.  And I

2    believe Ms. Murray will handle the arguments today, if

3    that's acceptable to the Court.

4                    THE COURT:  All right.  Thank you.

5                    Good afternoon.

6                    MR. DYKAL:  I'm sorry.  Thank you, Megan.  Ryan

7    Dykal on for CSC.  I apologize, Your Honor.

8                    THE COURT:  No problem.

9                    I have the motion to dismiss.  It has several

10   parts.  There is the motion to dismiss the claims of the

11   '772 patent as being patent ineligible; the motion to

12   dismiss the inducement claims for the '772, the '208 and the

13   '608; and the motion to dismiss willfulness of those three,

14   or is the '045 included in there?  I can't read my writing

15   there.

16                   MS. MURRAY:  Your Honor, this is Amelia Murray.

17   The '045 is not included in that last category.

18                   THE COURT:  Okay.  So then as I understand it

19   from reading the papers, let's take willfulness first.

20   Willfulness, it doesn't appear that the plaintiff contest

21   that there aren't sufficient allegations of willfulness as

22   to the '772, '208 and '608.  Is that correct, or at least

23   not at this time?

24                   MR. SMITH:  That's correct, Your Honor.  Our

25   intent was only to allege willfulness on the '045 patent.

THE COURT:  Okay.  So your position is you haven't even alleged it, so I don't need to grant the motion?

MR. SMITH:  That's correct, Your Honor.

THE COURT:  All right.  Defendant, why do you think --

MS. MURRAY:  Apologies.  Willfulness was alleged pretty generally in the complaint and there were no specific allegations as to those three patents.  So just in order to make sure that there were no claims of willful infringement we wanted to make sure to get those dismissed.

THE COURT:  Okay.  So I am not going to grant the motion on that just because there is a representation that there is no allegation of willfulness as to those patents, so willfulness won't be in the case as to those patents unless there is some kind of amendment.

All right.  Then with respect to the '772 patent, patent eligibility, this one I have been trying to get my head around.  So the amended complaint alleged infringement of at least claims 1 and 4, and sort of specified those claims.  The motion to dismiss seeks to have all of the claims, 1 through 20, determined to be ineligible, and then I got a letter saying claims 1 through 10 and 12 through 20 have been disclaimed, so the only claim that's currently alleged, even though it's not

the subject of any pleading, is claim 11.  Do I have that
correct?

             MR. SMITH:  Yes, Your Honor.

             THE COURT:  And when you start to say something,
if you could say who is speaking so that my court reporter
can make an accurate transcript, that would help.

             All right.  So I guess my question before I saw
that December 11th on the disclaimers was why is my looking
at claims 1 through 20 appropriate in light of the Federal
Circuit decision in *Hanz*?  Defendant, that one is directed
at you.

             MS. MURRAY:  Apologies.  Claims 1 through 20, I
believe at this point we're only asking the Court to look at
claim 11.

             THE COURT:  Yes, I know that.  I know that.  I
said that just a couple of seconds ago.  But as I read the
Federal Circuit decision in *Hanz*, when there is not a
counterclaim, I'm supposed to look at the claims that have
been asserted in the pleadings.  In the pleadings here, only
claims 1 and 4 were asserted.  I understand that that has
now been changed, but the pleadings have not changed.  So I
can't figure out why it was appropriate that I look at
claims 2 and 3, and 5 through 20.  I need to understand why
that was appropriate so then I can also figure out if it
would be appropriate for me to look at claim 11 in the

1      circumstance.

2                MS. MURRAY:  From --

3                THE COURT:  Why is it appropriate under *Hanz* in

4      this circumstance to look at claims other than those in the

5      complaint?

6                MS. MURRAY:  From CRC's perspective, in the

7      complaint the allegations were that at least claim 1 and 4

8      were being asserted.

9                THE COURT:  But that was very similar language

10     to what the Federal Circuit looked at in *Hanz*.  I mean, what

11     claims did they talk about infringement for or talk about

12     the elements of infringement?

13               MS. MURRAY:  They discussed elements of

14     infringement for claim 1 and claim 4.  We have not

15     specifically looked at that under *Hanz*.

16               THE COURT:  But that's what happened in *Hanz*, so

17     in *Hanz* what happened is the district court had found all of

18     the claims to be patent ineligible and when it got to the

19     Federal Circuit, the Federal Circuit said no, the court got

20     it correct that the claims that were included in the

21     complaint were ineligible, but as there was no counterclaim,

22     the court should not have looked at those other claims.  So

23     I'm trying to figure out whether -- it seemed to me like

24     we're in that situation in looking at actually the claims

25     that were in your original motion, and certainly claim 11

1    falls in that bucket, so that's why I'm trying to understand

2    why you think that the Federal Circuit would bless me doing

3    what you're asking, particularly when there is not even any

4    arguments that have been made directed right at claim 11.

5            MS. MURRAY:  I think the defendant would benefit

6    from additional briefing on this point if Your Honor would

7    allow it.

8            THE COURT:  Yeah, I don't think so.  This motion

9    has been out there.  I mean, certainly the Federal Circuit's

10   ruling was out there before, and I have issued plenty of

11   orders on *Hanz*, so no, I'm not going to let you brief it

12   further.  Does that tell me you don't have a response today

13   as to why it would be appropriate for me to do that?

14           MS. MURRAY:  That's correct, we do not have a

15   response to that.

16           THE COURT:  Okay.  So as I read the Federal

17   Circuit precedent, when there is no counterclaim at issue, I

18   should be looking at the claims that are asserted in the

19   complaint.  Here the complaint with respect to the '772

20   patent did say at least 1 to 4, but then when it specified

21   elements of infringement it only concentrated on claims 1

22   and 4.  So as I read *Hanz*, I don't think it's appropriate

23   that I would address the other claims.

24           I also understand that claims 1 and 4 are no

25   longer asserted and claim 11 is now the only one asserted.

1    If that's the case, then I would expect at some point that

2    the plaintiff is going to clean up its pleadings.  Do I have

3    that correct?

4              MR. SMITH:  Your Honor, this is Ryan Smith for

5    the plaintiff, PayRange.

6              I think based on the language, the relief

7    language and we amended our infringement contentions to

8    reflect only claim 11 was being asserted, at least from our

9    perspective we felt that was sufficient to satisfy notice

10   pleading with respect to the complaint and coupled with the

11   local rules, the local practice of the infringement

12   contentions.  That being said, if it's more appropriate to

13   amend the complaint to reflect claim 11 more specifically,

14   we would request leave to make that amendment and we could

15   do so pretty quickly.

16             THE COURT:  Yes.  I mean, look, right now your

17   complaint only asserts infringement with any specificity

18   whatsoever about claims that no longer exist.  Right?

19             MR. SMITH:  With respect to claim 4, that's

20   correct.  Claim 11 depends on claim 1.

21             THE COURT:  But claim 1, but claim 1 in and of

22   itself is no longer a valid claim; right, no longer an

23   existing claim?

24             MR. SMITH:  Correct.

25             THE COURT:  All right.  So it seems to me you

1    have to fix your pleadings because currently you don't have

2    any correctly well-pleaded allegations of a claim of

3    infringement of the '772 patent for a claim that exist.

4              MR. SMITH:  Thank you.  Your Honor, we will get

5    that.

6              THE COURT:  Okay.  Now we have talked about 101

7    which I am going to deny for the reasons I just said.  And

8    willfulness.  So that leaves us with inducement.  And for

9    inducement, I guess I want to hear from the plaintiff really

10   what your allegations are because with respect to willful

11   blindness, it seems to me that you're asserting a bunch of

12   stuff that happened in maybe 2017 or 2018 as the basis of

13   willful blindness, but it certainly wasn't being willfully

14   blind to the patents as we are talking about here as we see

15   in 2021 and 2022.

16              So what are your -- I guess let's get into it.

17   What are your allegations of actual knowledge of the '772,

18   '208 and '608 patents?  And if not actual knowledge, what is

19   it that you think in your complaint establishes willful

20   blindness of those?

21              Let's start with actual knowledge of those

22   patents.

23              MR. SMITH:  Your Honor, before the complaint was

24   filed, we sent a presentation as well --

25              THE COURT:  Could you start by telling your name

1   so that my court reporter knows who is talking.

2          MR. SMITH:  Your Honor, apologies.  Ryan Smith

3   for PayRange.

4          And before filing the complaint, I believe it

5   was approximately twelve days before that PayRange sent a

6   presentation discussing its intellectual property as well as

7   a draft complaint with the allegation to counsel for CRC.

8   So that was an instance of actual knowledge before the

9   complaint was filed.

10         THE COURT:  So that was actual knowledge and

11   remind me when the original complaint was filed.

12         MR. SMITH:  The original complaint I believe

13   was -- I have to pull this up.  I think it was maybe March

14   of 2022.  And so this was before that original complaint was

15   filed.

16         THE COURT:  Okay.  And that included assertions

17   of -- identified the '772, '208 and '608 patents and because

18   you had a draft complaint, it explains your assertions of

19   infringement?

20         MR. SMITH:  Yes, Your Honor, I think the draft

21   complaint was very similar to the complaint we subsequently

22   -- the complaint, the original complaint in this case.

23         THE COURT:  Okay.  And so that actual knowledge

24   of those three patents, what was the date of that?

25         MR. SMITH:  I believe the date was -- it was

1    approximately twelve days before we filed this, the original

2    complaint in this case.

3              THE COURT:  Okay.  Well, do you have that in

4    this amended pleading so that we have a date or did you not

5    put that in the amended pleading?

6              MR. SMITH:  I believe we -- let me try and find

7    that.

8              THE COURT:  Was that the March 3rd?

9              MR. SMITH:  Yes, I believe that is, right.

10             THE COURT:  Okay.  So that was March 3rd, 2023.

11   Okay.  And is that the only thing you're relying on for

12   actual knowledge?

13             MR. SMITH:  For the '208, '608, and '772

14   patents, that's correct, for actual knowledge, Your Honor.

15             THE COURT:  Okay.  Now, tell me what you're

16   relying on for willful blindness.

17             MR. SMITH:  And again, Ryan Smith for PayRange.

18   Your Honor is correct that we are relying on numerous

19   interactions that occurred prior to issuance of those

20   patents.  But part of the -- I think a key point here is

21   that these all come from the same -- the '208, '608 and '772

22   patents do relate back to the '045 patent and that

23   particular patent was identified by number in at least one

24   presentation from PayRange.  It was also marked on

25   PayRange's products.  As alleged by PayRange in the

operative complaint, CRC received those products and used

those products with the patent marking on it.  So they did

have knowledge of the '045 patent and that PayRange had

basically a family of patents that it was continuing to

prosecute, it had that in the presentation.

So while they did not have the specific patent

numbers, they certainly had a lot of bread crumbs that would

indicate that PayRange had patent IP and was continuing to

take steps to protect its intellectual property.

So that would in our view, not looking -- not

doing any analysis of PayRange's ongoing patent prosecution

on patent families that was according to PayRange directly

relevant to the product at issue from PayRange we believe

was willful blindness coupled with CRC's decision not to use

the PayRange system and instead use a competing vendor and

then develop their own system.

THE COURT:  Okay.  So now let me hear from the

defendant.  Let's say that I agree with you that they have

not asserted willful blindness, then I couldn't tell from

your motion, I mean, I certainly allow post-suit inducement

based on notice from a complaint being enough to establish

knowledge of the patents and knowledge of infringement for

inducement, so why wouldn't that March 3rd, 2023 letter and

the draft complaint be sufficient?

MS. MURRAY:  This is Ameila Murray from CRC.

1           Well, we certainly would ask the Court to follow
2    the rule put forth in *ZapFraud*, but obviously Your Honor
3    allows the complaint as --
4           THE COURT:  Judge Connolly and I -- I have a lot
5    of respect for him, but we just have a difference of opinion
6    on this issue.  So I know you cited to some of his opinions,
7    but that's not the way I read the law.
8           MS. MURRAY:  And in that case, we simply don't
9    think that the March 3rd letter establishes any sort of
10   pre-suit knowledge.  Obviously, you know, with the filing of
11   the complaints, those three patents were mentioned in the
12   complaint, so we don't have any arguments about that.
13          THE COURT:  So in terms of pre-suit, though,
14   what -- I mean, all we would be talking about was an extra
15   twelve days.  I'm not saying it wouldn't be all pre-suit
16   knowledge, it would be in the time that you got the notice,
17   right?
18          MS. MURRAY:  Right.  And this is Ameila Murray
19   again.
20          So if the case is that that letter does
21   establish the knowledge --
22          THE COURT:  It's a draft complaint.  What I'm
23   trying to figure out is are you saying that it didn't?  I
24   mean, I don't have it -- I just have an allegation that they
25   sent you a draft complaint which you think if I'm making

1  inferences which establish that there was a disclosure of

2  the patents by number and a disclosure of how they contend

3  you infringed.  So I am just going with that.  I don't know

4  what -- I don't know what your position is on that.

5              MS. MURRAY:  And we understand there is a split,

6  and so in that case, we don't contest that that would have

7  -- that that would have given the requisite knowledge.

8              THE COURT:  Okay.  So what I am going to do with

9  respect to this motion is I am going to grant it in part and

10  deny it in part.  I am going to deny it with respect to

11  willfulness of the '772, '208 and '608 patents because there

12  is no willful allegation.

13              I am going to deny it as to claim 11 of the '772

14  patent because, one, I am not convinced that that issue is

15  actually properly before me, because it's not the subject of

16  any pleading in this case.  And also, I don't have any

17  argument on that claim in particular.  So I understand that

18  defendant says well, too bad for the plaintiff, they waived

19  any arguments that that claim is somehow independently

20  patent eligible if the other ones aren't, but I am not

21  comfortable with that and I think that the plaintiff should

22  have an opportunity to present any arguments that it has on

23  that.

24              But then I will grant it with respect to

25  inducement of the '772, '208 and '608 patents prior to the

1    receipt of the March 3rd, 2023 letter.  And I will also ask

2    that the plaintiff look at the complaint and determine -- I

3    think for safety sake you should amend your pleading so that

4    you have asserted claims that actually exist in your

5    pleading, but that doesn't seem like it would take very long

6    for you to do.

7              So with that, anything else we need to discuss?

8              MR. DYKAL:  Your Honor, this is Ryan Dykal on

9    behalf of CRC.  We feel our arguments on 101 would apply to

10   claim 11, obviously, and so if PayRange filed an amended

11   complaint to assert claim 11, we just want to clarify that

12   it would be appropriate for us to renew our motion on 101

13   with respect to claim 11.  Otherwise it would seem to be

14   quite a loophole to be able to plead a claim that you don't

15   actually assert and then drop it and avoid 101 motion from

16   the pleadings.

17             THE COURT:  So you're suggesting you would file

18   a new motion?

19             MR. DYKAL:  Yes, Your Honor.

20             THE COURT:  Okay.  I mean, I am not going to

21   stop you.  I certainly understand that there are concerns

22   with the claims of that patent.  I am not going to stop you

23   from filing the motion.  I just don't want to be in a

24   position where if I were to grant that motion it would be

25   all for naught because the Federal Circuit could say look,

1     that claim wasn't properly in front of you.

2                    MR. DYKAL:  Understood, Your Honor.  And thank

3     you.

4                    THE COURT:  All right.  Anything else?

5                    MR. SMITH:  Your Honor, Ryan Smith for PayRange.

6                    Just to clarify, does PayRange have relief to

7     file an amended complaint to specifically allege claim 11?

8                    THE COURT:  Yes.  If you're going to do anything

9     else, you should, you know, show that draft amended

10    complaint to the defendant just to make sure that there is

11    not something else in there.  If there is something else in

12    there that you want to add that is objectionable, I guess

13    you would have to follow my procedures for filing an amended

14    complaint.  But if it's just to add in the information that

15    the claims, the other claims have been claimed and you're

16    now asserting claim 11, then you do have leave to do that.

17                    I guess I should ask at this point, too, what's

18    the status of the IPR petition on the '772 patent?

19                    MS. MURRAY:  This is Ameila Murray for CRC.

20                    That petition has not -- there has not been an

21    institution decision yet.

22                    THE COURT:  Do you have any expectation as to

23    when it might come out?

24                    MS. MURRAY:  I believe mid to late April.

25                    THE COURT:  Okay.  Well, keep me posted on

1    what's going on with that decision as well.

2              All right.  Anything else we need to discuss?

3              MR. SMITH:  Your Honor, Ryan Smith.  Nothing

4    from the plaintiff's perspective.

5              THE COURT:  Thank you.  Defendant?

6              MS. MURRAY:  Nothing from the defendant, either.

7              THE COURT:  All right.  Thanks everyone.  Enjoy

8    the rest of the week.

9              (Teleconference concluded at 2:24 p.m.)

10

11            I hereby certify the foregoing is a true and
     accurate transcript from my stenographic notes in the proceeding.

12

13                          /s/ Dale C. Hawkins
                         Official Court Reporter
14                         U.S. District Court

15

16

17

18

19

20

21

22

23

24

25